UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLY L.,[1] | ) | CIVIL ACTION NO. 4:22-CV-1699 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | ) | |

**<u>MEMORANDUM OPINION</u>**

## I.    INTRODUCTION

Kimberly L. ("Plaintiff") is an adult who lives in the Middle District of Pennsylvania. She seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before us upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 11). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find substantial evidence does

---

[1] The Judicial Conference of the United States's Committee on Court Administration and Case Management recommends that federal courts refer to social security plaintiffs by their first name and last initial. We adopt this recommendation.

Page 1 of 26

not support the Commissioner's final decision. Accordingly, we will remand this matter to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.    BACKGROUND AND PROCEDURAL HISTORY

On February 20, 2020, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 37; Doc. 13-2, p. 38).  In this application, Plaintiff alleged she became disabled on January 9, 2010, when she was forty-six years old, due to the following conditions: back problems; neck problems; fibromyalgia; nerve problems; degenerative disc disease; graves' disease; impulse disorder; ADHD; depression; bipolar disorder; mood swings; PTSD; pre-menopause; and arthritis. (Admin. Tr. 376; Doc. 13-6, p. 6). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, complete tasks, concentrate, understand, follow instructions, and use her hands. (Admin. Tr. 418; Doc. 13-6, p. 48). Plaintiff earned her high school diploma. (Admin. Tr. 377; Doc. 13-6, p. 7).

On August 17, 2020, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 37; Doc. 13-2, p. 38). On December 15, 2020,

Plaintiff's application was denied on reconsideration. *Id.* On February 26, 2021, Plaintiff requested an administrative hearing. *Id.*

On September 1, 2021, Plaintiff and her counsel participated in a telephone hearing before Administrative Law Judge Therese A. Hardiman (the "ALJ"). (Admin. Tr. 37, 56; Doc. 13-2, pp. 38, 57). On October 15, 2021, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 56; Doc. 13-2, p. 57). On October 20, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 339; Doc. 13-4, p. 91). Along with her request, Plaintiff submitted medical records not available to the ALJ. (Admin. Tr. 22; Doc. 13-2, p. 23).

On August 9, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 21; Doc. 13-2, p. 22).

On October 27, 2022, Plaintiff filed a complaint seeking judicial review in this Court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is "erroneous," "unfounded," is not supported by substantial evidence, and is "contrary to the law and its provisions as found in the Social Security Act." (Doc. 1, ¶¶ 11-12). As relief, Plaintiff requests that the court modify the ALJ's decision to grant Plaintiff's application. (Doc. 1, ¶ 12(c)).

On January 6, 2022, the Commissioner filed an answer. (Doc. 12). In the answer, the Commissioner maintains that the decision denying Plaintiff's application is correct, was made in accordance with the law, and is supported by substantial evidence. (Doc. 12, ¶ 7). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 13).

Plaintiff's Brief (Doc. 16), the Commissioner's Brief (Doc. 19), and Plaintiff's Reply (Doc. 21) have been filed.  This matter is now ready to decide.

## III.   LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process. We will also discuss the framework an ALJ is required to use to evaluate medical opinion evidence.

### A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[2] Substantial evidence "does not mean a large or

---

[2] *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[4] A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict in the record.[5] In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[6] When determining if substantial evidence supports the Commissioner's final decision under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[7]

---

[3] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[4] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[5] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[6] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[7] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC v. Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see, e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[8]

To determine whether substantial evidence supports the Commissioner's final decision, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[9] In doing so, however, the court is enjoined to refrain

---

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

[9] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*,

from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[10]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. Courts acknowledge that the records in social security cases are voluminous, and as such "there is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."[11] Instead, an ALJ's findings should,

> [B]e as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the [Commissioner's final decision] is supported by substantial evidence.[12]

Substantial evidence does not support an ALJ's decision where there is a significant disparity between what is in the record itself and the ALJ's synopsis of it because the Court "cannot tell if significant probative evidence was not credited or was

---

900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

    [10] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

    [11] *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

    [12] *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

simply ignored."[13] When determining whether a decision is adequately explained, it is also important to remember that the decision itself need not adhere to a particular format, so long as it reflects that there was sufficient development of the record and permits meaningful review when read as a whole.[14] For example, if an ALJ discusses and analyzes evidence in a section of the decision that appears before determining the persuasiveness of the medical opinions, she is not required to repeat the analysis for the sake of elaborating on her articulation of the persuasiveness of a medical opinion so long as the Court is satisfied that the ALJ was sufficiently familiar with the medical evidence to have evaluated whether it supported the medical opinion.[15]

### B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

---

[13] *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("the ALJ describes four diagnostic tests and five treatment notes. Yet our review of the record reflects over 115 pages of relevant, probative treatment notes from Drs. Zaslow and Karpin detailing Fargnoli's medical condition and progress.").

[14] *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (affirming an ALJ's decision where the step three explanation was deficient, but the decision as a whole illustrated that the ALJ considered the appropriate factors).

[15] *See Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *4 (E.D. Pa. Sept. 30, 2021).

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[16] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[17]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[18] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[19]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations

---

[16] 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).
[17] 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).
[18] 20 C.F.R. § 416.920(a).
[19] 20 C.F.R. § 416.920(a)(4).

caused by his or her impairment(s)."[20] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[21]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[22]  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[23]

### C.   STANDARDS GOVERNING AN ALJ'S EVALUATION OF MEDICAL OPINIONS AND PRIOR ADMINISTRATIVE MEDICAL FINDINGS

When deciding whether to grant or deny an application for benefits, an ALJ is required to consider "all evidence" in the case record.[24] Social Security case

---

[20] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

[21] 20 C.F.R. § 416.945(a)(2).

[22] 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912(a); *Mason*, 994 F.2d at 1064.

[23] 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

[24] 20 C.F.R. § 416.920(a)(3).

records often include medical opinions and prior administrative medical findings.[25] The framework governing an ALJ's consideration of medical opinions and prior administrative medical findings is set forth in 20 C.F.R. § 416.920c.

Under this regulation, an ALJ will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."[26] Instead, the ALJ assesses an opinion or finding's persuasiveness. However, when medical opinions and prior administrative medical findings conflict, "the ALJ is not only entitled but required to choose between them."[27] That choice, is guided by the ALJ's consideration of the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship); and (4) specialization.[28] The ALJ may also consider any other factors that "tend to support or contradict" a medical opinion or prior administrative medical finding, including but not limited

---

[25] The Commissioner's regulations also carefully define these types of evidence. 20 C.F.R. § 416.902(d) (defining medical source); 20 C.F.R. § 416.913(a)(2) (defining the types of statements that are medical opinions); 20 C.F.R. § 416.913(a)(5) (defining prior administrative medical finding).

[26] 20 C.F.R. § 416.920c(a).

[27] *Cotter*, 642 F.2d at 705.

[28] 20 C.F.R. § 416.920c(c).

to: a source's familiarity with the other evidence in the claim, his or her understanding of the disability program and policies, and whether new evidence received after the opinion or finding was issued makes the opinion or finding more or less persuasive.[29] Although all relevant factors must be considered, supportability and consistency are the most important factors when evaluating an opinion or finding's persuasiveness.[30]

The ALJ also has an obligation to articulate these findings in a particular way, and with enough specificity so that a reviewing court may know the basis for the decision.[31] Remand may be required where an ALJ's findings are not adequately articulated, or where substantial probative evidence was disregarded for improper reasons.[32] Examples of improper reasons include an ALJ's exclusive reliance on his

---

[29] 20 C.F.R. § 416.920c(c).

[30] 20 C.F.R. § 416.920c(a).

[31] 20 C.F.R. § 416.920c(b); *Cotter*, 642 F.2d at 705.

[32] *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (explaining that "an ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence." The ALJ may "choose whom to credit, but 'cannot reject evidence for no reason or for the wrong reason.'") (quoting *Mason*, 994 F.2d at 1066); *Frankenfield v. Bowen*, 861 F.2d 405 (3d Cir. 1988) (finding that the Secretary could not reject medical determinations "simply by having the administrative law judge make a different medical judgment."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").

or her own interpretation of raw medical data to reject a medical source's opinion or medical finding, or an ALJ making a speculative inference based on a claimant's activities.[33] Typically, the Courts have very little patience with ALJs who rely on speculative inferences drawn from raw medical data or a claimant's activities to reject conclusions reached by medical professionals.[34] In large part because in "[c]ommon sense can mislead" and "lay intuitions about medical phenomena are often wrong."[35]

---

[33] The term "raw medica data" in this context typically refers to "objective medical evidence." Karolyn A. Kubitschek and John C. Dubin, *Social Security Disability Law & Procedure in Federal Court*, § 2:24. Medical Records (Feb. 2024 Update); *see also* 20 C.F.R. § 416.902(k) (defining objective medical evidence as "signs, laboratory findings, or both." "Signs" in turn, are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)." 20 C.F.R. § 416.902(l). "Signs must be shown by medically acceptable clinical diagnostic techniques." *Id.* "Laboratory findings" are defined as one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 416.902(g). "Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests." *Id.* A medical source bases his or her conclusions on raw medical data.

[34] *Walters v. Saul*, 452 F.Supp.3d 164, 178 (M.D. Pa. 2020) (citing *Gray v. Comm'r of Soc. Sec.*, No. 18-CV-184-FPG, 2019 WL 1499141, at *3-14 (W.D.N.Y. Apr. 5, 2019)), report and recommendation adopted, 2020 WL 1531369 (M.D. Pa. Mar. 31, 2020).

[35] *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (observing that if the ALJ had relied solely on his inference that a person with disabling heart disease could work based on his normal activities, which included playing handball forty

## IV.   DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's decision

for the following reasons:

(1)   The ALJ improperly rejected Dr. Stone's assessment that Plaintiff could lift only five pounds, could never reach overhead, could only occasionally operate foot controls, based on her own lay evaluation of medical records;

(2)   Substantial evidence does not support the ALJ's rejection of Dr. Stone's assessment that Plaintiff could only walk one block because her conclusion is based on a mischaracterization of the evidence;

(3)   The ALJ improperly rejected Dr. Barnes's opinion that Plaintiff would be limited to the performance of one- and two-step tasks based on her own lay opinion about medical issues;

(4)   Substantial evidence does not support the ALJ's finding that Dr. Barnes's opinion is only partially persuasive because the ALJ did not articulate her supportability analysis; and

(5)   Substantial evidence does not support the ALJ's assessment of Plaintiff's statements that she has difficulty lifting, poor sleep, and pain throughout her body.[36]

_____

minutes per week, remand would have been required because that particular claimant's heart disease reached worse to psychological stress than physical stress).

[36] We find it very helpful when a statement of errors is set forth in separate numbered paragraphs. *See* L.R. 83.40.4(b) (explaining that the statement of errors in a brief "shall set forth in separate numbered paragraphs the specific errors committed at the administrative level."). This ensures that both parties, and the Court, have a clear understanding of the errors at issue and can effectively respond to them.

Before turning to the merits of Plaintiff's arguments, we will summarize the ALJ's findings in her decision.

### A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her October 2021 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between February 20, 2020 (Plaintiff's application date) and October 15, 2021 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 40; Doc. 13-2, p. 41).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the cervical spine; cervical radiculopathy; fibromyalgia; and a depressive disorder. (Admin. Tr. 40; Doc. 13-2, p. 41). The ALJ also found that Plaintiff's records reflect diagnosis or treatment for the following medically determinable non-severe impairments: degenerative disc and joint disease of the lumbar spine; osteoarthritis multiple joints; obstructive sleep apnea (OSA); hypertension; hyperlipidemia; hypothyroidism; gastroesophageal reflux disease (GERD); vitamin D deficiency; irritable bowel syndrome (IBS); a throat cyst; dental caries; essential tremor; a bipolar disorder; an anxiety disorder; attention-deficit hyperactivity disorder

(ADHD); an impulse disorder; opioid dependency; a suboxone use disorder; an opioid use disorder; and cannabis use disorder. (Admin. Tr. 42; Doc. 13-2, p. 43). The ALJ identified the following impairments as not medically determinable: constipation; chronic fatigue; urinary hesitancy; chronic laryngitis; dry mouth; hoarseness; chronic pain syndrome; dental pain; irregular menstruation; mild spasmodic torticollis; cervicalgia; and neck pain. (Admin. Tr. 41; Doc. 13-2, p. 42).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 44-48; Doc. 13-2, pp. 45-49).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 416.967(b) except Plaintiff:

> could occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds; could sit for up to 6 hours and stand/walk for up to 6 hours, in an 8- hour workday; could occasionally climb stairs and ramps, but must never climb on ladders, ropes, and scaffolds; could occasionally balance; must avoid exposure to concentrated levels of temperature extremes, vibrations, fumes, and hazards, which are defined as heights and moving machinery; is limited to unskilled work activity as described in the Dictionary of Occupational Titles (DOT), as low stress type work, that is defined as engaging in only occasional decision-making and only presenting only occasional changes in the work setting, with no interaction with the public; and could occasionally engage interaction with coworkers and supervisors.

(Admin. Tr. 48; Doc. 13-2, p. 49).

At step four, the ALJ found that Plaintiff had no past relevant work. (Admin. Tr. 55; Doc. 13-2, p. 56).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 55-56; Doc. 13-2, pp. 56-57). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: routing clerk, DOT #222.687-022; photocopy machine operator, DOT #207.685-014; and mail sorter, DOT #222.587-038. *Id.*

## B. THE ALJ DID NOT ADEQUATELY EXPLAIN WHY SHE REJECTED DR. STONE'S REACHING LIMITATIONS

The Bureau of Disability Determination referred Plaintiff to Marielle Stone, M.D. ("Dr. Stone") for a consultative examination. On August 10, 2020, Dr. Stone examined Plaintiff, and then submitted an examination report, range of motion testing, and a medical opinion about Plaintiff's ability to do physical work-related activities. (Admin. Tr. 2017-2031; Doc. 13-7, pp. 1555-1569).

In her medical opinion, Dr. Stone assessed that Plaintiff could never reach overhead, and only occasionally reach in other directions. *Id.* Dr. Stone explained that these limitations were imposed due to decreased shoulder range of motion. *Id.*

Contemporaneous range of motion testing documents limited shoulder range of motion. (Admin. Tr. 2030; Doc. 13-7, p. 1568). Dr. Stone observed that Plaintiff had: a 90-degree range of motion on shoulder forward elevation, but that a normal range of motion is 150 degrees; and a 90-degree range of motion on shoulder abduction, but that a normal range of motion is 150 degrees. *Id.*

Two non-reviewing medical sources made administrative findings after Dr. Stone conducted her examination. Neither source assessed a reaching limitation. (Admin. Tr. 222, 240; Doc. 13-3, pp. 27, 45) (finding no manipulative limitations). They did not, however, discuss why no reaching limitation was included.

In this case, the ALJ found that Plaintiff had medically determinable impairments of degenerative disc disease of the cervical spine, cervical radiculopathy, and fibromyalgia. It appears that any of these impairments could cause the range of motion deficits Dr. Stone observed. Unlike Dr. Stone, the ALJ did not include any reaching limitation, and did not discuss this limitation in her analysis of the opinion's persuasiveness. (Admin. Tr. 52-53; Doc. 13-2, pp. 53-54).

Plaintiff argues that the ALJ "erroneously declined to find Dr. Stone's opinion persuasive, even though Dr. Stone supported her opinion with clinical findings." (Doc. 16, p. 9). Plaintiff asserts:

> Due to decreased shoulder range of motion, Dr. Stone found she could never reach overhead and could only occasionally reach with either

hand (Tr. 2024). . . . As a layperson, the ALJ is not qualified to determine that these findings do not support a medical provider's opinion *See Northington v. Berryhill*, 2018 WL 2172565 at *3 (E.D. Pa. Feb. 27, 2018)("In rejecting a physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may not reject a treating physician's opinion 'due to his or her own credibility judgments, speculation or lay opinion.'") (citing *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (internal quotation marks omitted).

(Doc. 16, pp. 9-10).

In response, the Commissioner argues that "[w]hile Plaintiff may disagree with the ALJ's weighing of the evidence, this does not mean it is erroneous." (Doc. 19, p. 16). He argues that, as long as substantial evidence supports the Commissioner's decision, which he claims it does here, the ALJ's conclusion is entitled to deference. *Id.*

In reply, Plaintiff argues that the Commissioner did not respond to her argument, and therefore it should be deemed unopposed. (Doc. 21, p. 2).

Here, we are mindful that, as Plaintiff argues, an ALJ is not permitted to rely on speculative inferences gleaned from the record to discredit a medical source, especially inferences beyond those a lay evaluator may reasonably make. Furthermore, remand is required where the basis for an ALJ's finding cannot be determined after reviewing the decision as a whole.

In her supportability analysis, the ALJ wrote,

the physical examination findings included in Dr. Stone's report support only a lesser degree of limitation than that which was suggested, i.e. the claimant's straight leg raise test results, both seated and supine, were negative, her stance was normal, and she got on/off and in/out of the examination table/chair without difficulty. Tenderness upon palpation was only mild and only 6 positive tender points were detected. Her lower extremity and upper extremity strength were 4/5 and 5/5 respectively.

(Admin. Tr. 53; Doc. 13-2, p. 54).[37]

The Commissioner's regulations require that an ALJ articulate *how* supportability was considered.[38] The relevant portions of the ALJ's supportability analysis in this case, however, summarize probative information without any accompanying analysis. For example, the ALJ simply states that Plaintiff's upper extremity strength was 5/5. (Admin. Tr. 53, Doc. 13-2, p. 54). Plaintiff's upper extremity strength may have some bearing on how much reaching (frequent vs. occasional) Plaintiff could do assuming she has adequate mobility. This statement does not satisfy the ALJ's obligation to articulate *how* supportability was considered because it does not articulate whether or not that part of the report supports Dr. Stone's assessment. Another example of a statement lacking sufficient accompanying analysis is the ALJ's reference to mild tenderness and six positive

---

[37] The ALJ's assessment that straight leg raising tests, and her ability to get on and off an exam table are not relevant to Plaintiff's shoulder range of motion. Therefore, we will not discuss them in detail.

[38] 20 C.F.R. § 416.920c(b)(2).

tender points. This information does relate to Plaintiff's cervical impairment and fibromyalgia diagnosis and is relevant to and probative of Plaintiff's reaching limitation. The articulation provided, however, does not make that clear.[39] Similarly, the ALJ does not suggest whether the tenderness or trigger points support Dr. Stone's reaching limitation or not.

Last, as Plaintiff points out, the ALJ does not discuss the range of motion testing that suggests Plaintiff cannot lift her arms over her head. This evidence is both significant and probative as to whether Plaintiff could perform an occupation requiring overhead reaching.

Although Plaintiff appears to suggest that the ALJ's reference to Dr. Stone's clinical observations amounts to speculative inferences drawn from raw medical data, we disagree in large part because the ALJ does not articulate what she speculates or infers. Instead, her articulation can be more appropriately characterized as a conclusion that the opinion is "partially persuasive" followed by a summary of

---

[39] Regarding "tenderness," Dr. Stone wrote in her report that, Plaintiff had "mild tenderness to palpation over the cervical spine." (Admin. Tr. 2020; Doc. 13-7, p. 1558). Regarding Plaintiff's trigger points, Dr. Stone wrote,

> The claimant has a total of 6 positive trigger points identified on today's examination. They are in the bilateral occiput, bilateral supraspinatus muscles, and bilateral trapezius muscles.

(Admin. Tr. 2020; Doc. 13-7, p. 1558). Omitted from the ALJ's discussion is that the trigger points at issue were all observed near Plaintiff's shoulder muscles.

raw medical data from Dr. Stone's report. The result, however, is the same. The summary provided does not explain how the ALJ considered the supportability factor, and therefore the ALJ's persuasiveness analysis is defective because it does not comply with 20 C.F.R. § 416.920c(b)(2).

Some courts view a defect in an ALJ's articulation as a procedural rather than substantive error, and hold that where an error is procedural the Court must consider whether the error is harmful before deciding to remand a case for further proceedings.[40] Although this district has not drawn the procedural/substantive distinction, we will consider whether this error is harmful before deciding whether remand is appropriate.[41] To decide whether an error is harmful or harmless, courts consider whether remand might reasonably lead to a different result.[42] If there is a reasonable possibility that it could, the error at issue is harmful.

---

[40] *Caitlin S. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00892-TPK, 2024 WL 2873390, at *6 (W.D.N.Y. June 7, 2024) (citing *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022)); *Devonte C. v. Kijakazi*, No. 2:21-CV-141, 2023 WL 2808103, at *7 (D.N.J. Apr. 6, 2023).

[41] *Minarsky v. Kijakazi*, No. 1:23-CV-1000, 2024 WL 3993220, at *11 (M.D. Pa. Aug. 29, 2024) (conducting a harmless error analysis after finding that the ALJ's persuasiveness analysis was inadequate).

[42] *Id.* (citing *Timothy J.B. v. O'Malley*, No. 4:22-CV-1036, 2024 WL 968875, at *4 (M.D. Pa. Mar. 6, 2024)).

An ALJ's failure to adequately articulate the persuasiveness analysis for a medical opinion or medical finding is not always harmful error.[43]  Courts have found, however, that such an error is harmful where the result could be different if the opinions at issue were given full consideration.[44] Dr. Stone's examination report includes clinical findings suggestive of shoulder pain, and a limited range of motion. Notably, each job cited to support the ALJ's conclusion at step five requires "frequent" reaching.[45] Moreover, the *Dictionary of Occupational Titles* and its companion publication *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* do not distinguish between reaching overhead and reaching in other directions.[46] Thus, the ALJ's RFC assessment and

---

[43] *Caitlin S.*, 2024 WL 2873390, at *6 (finding that the substance of the regulation was not violated where the ALJ engaged in a thorough review of the medical evidence and noted at several places how the objective evidence either did, or did not, support particular functional limitations).

[44] *See e.g.*, *Minarsky*, 2024 WL 3993220, at *11 (remanding due to an error in the ALJ's persuasiveness articulation because remand might lead to a different result if the medical opinions were found persuasive after given full consideration).

[45] *Dictionary of Occupational Titles*, No. 222.687-022 Routing Clerk, 1991 WL 672133 (requiring frequent reaching); *Dictionary of Occupational Titles*, No. 207.685-014 Photocopying-Machine Operator, 1991 WL 671745 (requiring frequent reaching); and *Dictionary of Occupational Titles*, No. 222.587-038 Router, 1991 WL 672123 (requiring frequent reaching).

[46] *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Appendix C, available on *Westlaw Edge* at SCODICOT APP C (defining reaching as "[e]xtending hand(s) and arm(s) in any direction," defining frequent as an activity or condition that exists from 1/3 to 2/3 of the time, and defining occasional as an activity or condition that exists up to 1/3 of the time).

the requirements of the occupations identified to support her conclusion that Plaintiff can engage in other work exceed Dr. Stone's limitation to "occasional" reaching in any direction and no overhead reaching. There is no evidence in the record as to whether a person who is limited to occasional reaching and is unable to reach overhead could engage in other work. If credited, there is a reasonable possibility these reaching restrictions could result in a different outcome. We therefore conclude the ALJ's error was harmful.

This Court has the authority to affirm, modify or reverse the Commissioner's decision with or without remanding the case for rehearing.[47] However, benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits."[48] Plaintiff does not argue that this test has been met. Hypothetically, if the Court was required to decide whether to credit Dr. Stone's reaching limitations, there is insufficient evidence in the current record

---

[47] 42 U.S.C. § 405(g).

[48] *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (citing *Podedworny v. Harris*, 745 F.2d 210, 222 (3d Cir. 1984)).

to determine whether Plaintiff could engage in other work.[49] We therefore find that the appropriate measure is to remand this matter for further proceedings.

### C.    PLAINTIFF'S REMAINING ARGUMENTS

Plaintiff's remaining arguments challenge the adequacy of the ALJ's RFC assessment based on her analysis of the persuasiveness of a second medical opinion and based on her analysis of Plaintiff's symptoms. Having concluded for the above-stated reasons that it is appropriate to remand this case for further proceedings because of a defect in the ALJ's evaluation of a medical opinion and its impact on the RFC analysis, we will not address Plaintiff's other arguments, as a remand may produce different results on these claims, making discussion of them moot.[50] Plaintiff is free, however, to raise these issues during the proceedings on remand.


[The next page contains the Conclusion]

---

[49] We take no position on whether the ALJ should have found this opinion persuasive, or more broadly whether the ALJ should have granted Plaintiff's application for benefits.

[50] *Wheaton v. Saul*, No. 3:19-CV-01920, 2021 WL 736164 (M.D. Pa. Feb. 25, 2021).

## V.    CONCLUSION

Accordingly, for the foregoing reasons, this case will be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). An appropriate order will be issued.

Date: October 24, 2024                BY THE COURT

_s/William I. Arbuckle_
William I. Arbuckle
U.S. Magistrate Judge